U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 MAR -9 AM 10: 19

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KIRK F. WOOL, )
 )
    Petitioner, )
 )
v. ) Case No. 2:19-cv-65
 )
JAMES BAKER, )
Commissioner of Vermont Department )
of Corrections,[1] )
 )
    Respondent. )

## OPINION AND ORDER
## DECLINING TO ADOPT REPORT AND RECOMMENDATION AND
## DENYING AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS
(Docs. 1 & 3)

This matter is before the court for review of the Magistrate Judge's June 4, 2019 Report and Recommendation ("R & R"), wherein he recommended the court construe self-represented Petitioner Kirk F. Wool's petition for writ of habeas corpus as a second or successive petition pursuant to 28 U.S.C. § 2244(b) and transfer it to the Second Circuit. (Doc. 3.) On June 14, 2019, Petitioner, an inmate in the custody of the Vermont Department of Corrections ("DOC"), filed a one-page objection to the R & R contesting its conclusion that his petition is second or successive on the basis that his Ex Post Facto Clause arguments do not challenge the legality of his conviction or sentence, but rather DOC's classification of him and its impact on his eligibility for parole or furlough.

On December 3, 2019, Petitioner filed an addendum directing the court to *Shaw v. State*, 130 N.E.3d 91 (Ind. 2019), in which the Indiana Supreme Court held that, in "limited" circumstances in which "a post-conviction petition . . . raises only issues emerging from [a] new trial, new sentencing, or new appeal obtained from a federal court

---

[1] Petitioner named Lisa Menard, former DOC Commissioner, as the Respondent. The case caption has been updated to reflect that James Baker is the current Commissioner.

through habeas proceedings[,]" such a habeas petition "is not a 'second' or 'successive' petition[]" requiring prior authorization from the Indiana Supreme Court or the Court of Appeals. *Id.* at 91, 93 (defining the issue as "whether a post-conviction petition should be considered a 'second' or 'successive' petition if the errors it asserts arose from the proceedings on remand").

I. **Factual and Procedural Background.**

In 1992, Petitioner was convicted by a jury in the Vermont Superior Court, Criminal Division of two counts of aggravated sexual assault. He was sentenced to a term of imprisonment of twenty-nine to seventy-three years. Petitioner's minimum sentence expired in January 2011, and his maximum term of imprisonment expires in December 2034.

In December 2013, Petitioner sought injunctive relief in the Vermont Superior Court and asserted that DOC violated the Ex Post Facto Clause by classifying him as a Level C offender,[2] which allegedly denied him access to required programming for

---

[2] The Vermont Supreme Court reviewed in detail the legislative history underlying Petitioner's challenge and thus only a brief summary is provided here. In 1992, when Petitioner committed the criminal acts resulting in his incarceration, an inmate was eligible for parole if the Parole Board determined the inmate could be released "without detriment to the community or himself[]" and after serving a minimum sentence. 28 V.S.A. § 501(a) (1983). A separate statute in effect in 1992 authorized DOC to grant furlough for up to fifteen days for certain listed purposes. 28 V.S.A. § 808(a) (1973). DOC also had the authority to establish treatment programs for and classification of inmates, to create rules governing its programs, and to periodically review programming decisions. 28 V.S.A. § 102(b)(2), (c)(1), (c)(8). Since 1992, options for early release have been expanded, but the statutes governing DOC's discretion regarding treatment programs and classification is unchanged.

In 1999, the Vermont Legislature created a category of "listed crimes" in an amended victims' rights statute. 13 V.S.A. § 5301(7). Aggravated sexual assault, for which Petitioner was convicted, is a listed crime. Two years later, the Vermont Legislature enacted a conditional reentry statute, which authorized DOC to conditionally release an inmate at the end of his or her minimum sentence. In response to a series of legislative changes to early release and furlough statutes, DOC created a three-tier prisoner classification system based on its assessment of an inmate's risk and the inmate's programming needs. Because Level C classification may affect reentry options available to an inmate, directives require DOC to review an inmate's classification upon expiration of the minimum term of imprisonment and every two years thereafter. *See Wool v. Pallito*, 2018 VT 63, ¶¶ 13-14, 207 Vt. 586, 592, 193 A.3d 510, 515.

2

furlough and parole.[3] *See Wool v. Pallito*, 2018 VT 63, ¶ 3, 207 Vt. 586, 588, 193 A.3d 510, 512. In March 2017, the Vermont Superior Court granted summary judgment in DOC's favor on Petitioner's Ex Post Facto Clause claims. In affirming the trial court, the Vermont Supreme Court examined the laws in effect when Petitioner was sentenced, the administrative classification of "Level C" offenders, and controlling precedent and concluded Petitioner "failed to demonstrate that the practical implementation of the new directives [including the Level C designation] created more than a speculative or attenuated possibility of increasing [his] punishment." *Id.* at ¶ 29, 207 Vt. at 598, 193 A.3d 519.

In his April 26, 2019 petition, Petitioner states that he is "not challeng[ing] any criminal conviction or prison sentence imposed for all such convictions." (Doc. 1 at 1, ¶ 3.) Rather, he challenges DOC's designation of him as Level C, which he contends increases his maximum sentence of seventy-three years to a sentence without the possibility of parole which he characterizes as "punitive in nature" and in violation of the Ex Post Facto Clause "by the very fact that [he has], as a matter of law, a Liberty Interest in being paroled." *Id.* at 2, ¶ 6.

## II.  Conclusions of Law and Analysis.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R.

---

"The classification directives do not govern the Parole Board or limit or alter its discretion to release an offender after his minimum sentence expires." *Id.*

[3] DOC directive 371.11 explains how a Level C classification may impact an inmate's programming and reentry options:

> Case planning for Level C offenders will generally focus on long term confinement. Due to the nature of their offenses, victim harm and high risk profile these offenders must demonstrate long term behavioral and psychological stability, commitment to change, and completion of significant treatment goals prior to any release consideration. In these cases, the burden of demonstrating these objectives lies with the offender, and [DOC] will use the maximum release date, less six months, as the reference for case planning purposes.

*Wool*, 2018 VT 63, ¶ 15, 207 Vt. at 592-93, 193 A.3d at 515.

Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Rule 72(b) requires a party to provide "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (concluding a "bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority . . . does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)").

### A. Whether Petitioner Seeks Relief Pursuant to § 2254 or § 2241.

Under 28 U.S.C. § 2254(a), a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A claim presented to a district court in a second or successive habeas corpus application that was presented in a prior application shall be dismissed unless the petitioner has been granted permission to do so by the court of appeals. 28 U.S.C. § 2244(b)(1), (b)(3)(A).

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). "A challenge to the *execution* of a sentence—in contrast to the *imposition* of a sentence—is properly filed pursuant to § 2241." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006). An inmate's § 2241 petition may address matters such as the administration of parole, computation of the sentence by prison officials, prison disciplinary actions, prison transfers, types of detention, and prison conditions. *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.5 (2d Cir. 1991) (concluding challenges to the

4

length, appropriateness, or conditions of confinement are properly brought under § 2241). Before filing a habeas petition under § 2241, a petitioner must exhaust administrative remedies. *See* 28 C.F.R. § 542.15(b)(3) (2000); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001) (requiring federal prisoners to exhaust their administrative remedies prior to filing a habeas petition).

In this case, Petitioner challenges DOC's application of its offense classification system to him. Accordingly, he is not challenging his conviction or his sentence, but rather the ability to effectively alter his sentence through an adjustment to his sentencing classification. *See Jennings v. United States*, 2009 WL 1230317, at *4 (E.D.N.Y. Apr. 29, 2009) (concluding challenges to "BOP's allegedly erroneous security level classification, good time determinations, treatment by BOP staff, and other BOP administration and conduct" fall under § 2241). The court thus construes his petition as one brought pursuant to § 2241 and declines to construe the petition as one brought pursuant to § 2254.

### B. Whether Petitioner's Level C Classification Violates the Ex Post Facto Clause.

The Ex Post Facto Clause provides that "[n]o bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. A penal law violates the Ex Post Facto Clause if it applies to events occurring before its enactment and disadvantages the inmate affected by it. *Weaver v. Graham*, 450 U.S. 24, 29 (1981). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244, 250 (2000). An ambiguous or speculative "'disadvantage[,]'" however, is insufficient to implicate the Ex Post Facto Clause. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 & 509 (1995) (upholding constitutionality of law which allowed parole hearings for certain inmates every three years instead of annually). Rather, "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990).

5

Although Petitioner argues that his Level C classification violates the Ex Post Facto Clause, he has not demonstrated that the challenged classification and administrative directives "altered or eliminated [DOC's] fundamental discretion over [his] treatment programming and led to an increase in his sentence." *Chandler v. Pallito*, 2016 VT 104, ¶ 29, 203 Vt. 482, 499, 158 A.3d 296, 308. The addition of listed crimes in the 1999 amendments to the Vermont victims' rights statute neither altered the statutory punishment for any of the listed crimes nor impacted DOC's discretion to determine parole eligibility. Conviction of a listed crime is one of several factors DOC considers when determining an inmate's classification, including likelihood to reoffend and whether the offense was egregious. *See Garner*, 529 U.S. at 253 ("[W]here parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions."). Pursuant to the alterations to DOC's classification system, Petitioner is not automatically ineligible for a term of parole. Indeed, the Vermont Supreme Court rejected a nearly identical contention by Petitioner and observed that the Parole Board retained the discretion to release Petitioner on parole because the commission of a listed offense is "merely one of several factors [DOC] uses to determine whether an inmate should be designated Level C." *Wool*, 2018 VT 63, ¶ 25, 207 Vt. at 596, 193 A.3d at 518.

As in this case, where the statute or administrative policy "does not by its own terms show a significant risk [of increasing punishment], the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255. At best, Petitioner cites a speculative possibility that DOC's classification system may increase the length of his incarceration because it may render it less likely for him to be released

on parole. In such circumstances, the court cannot conclude the Ex Post Facto Clause has been violated. *See id.* at 256 ("Without knowledge of whether retroactive application of the amendment to [the challenged rule] increases, to a significant degree, the likelihood or probability of prolonging [petitioner's] incarceration, his claim rests upon speculation.").

## CONCLUSION

For the foregoing reasons, the court DECLINES TO ADOPT the Magistrate Judge's R & R (Doc. 3) and DENIES and DISMISSES Petitioner's petition for writ of habeas corpus (Doc. 1).

Pursuant to Fed. R. App. P. 22(b)(1) and 28 U.S.C. § 2253(c)(2), the court DENIES Petitioner a certificate of appealability in this matter because Petitioner has failed to make a substantial showing of the denial of a constitutional right.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 9th day of March, 2020.

Christina Reiss, District Judge
United States District Court